UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

KENDRICK D., by his mother          :
JEANETH S.,
                                    :
                    Plaintiff,
                                    :
     -against-
                                    :
CATHOLIC HOME BUREAU;
JOSIANNE VINCENT, individually      :   06 Civ. 13129 (DAB)(HBP)
and as caseworker; JACQUELYN
LEOGRANDE, individually and as      :   REPORT AND
a supervisor; JOYCE SLAUGHTER,          RECOMMENDATION
individually and as a manager;      :
SHAKEMA ALLEN, individually and
as a caseworker; KENNETH S.         :
WALKER, individually and as a
supervisor; WILLIAM C. BELL,        :
individually and as a
commissioner; and the CITY          :
OF NEW YORK,
                                    :
                    Defendants.
                                    :
----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.   Introduction


          Plaintiff, Kendrick D., a minor, with his mother,

Jeaneth S., commenced this action on November 13, 2006, against

defendants Catholic Home Bureau, Josianne Vincent, Jacqueline

LeoGrande, Joyce Slaughter, Shakema Allen, Kenneth S. Walker, William S. Bell, and the City of New York for alleged civil rights violations under 42 U.S.C. § 1983 and state law violations.  The suit alleged that defendants placed plaintiff in an unfit foster home, where he suffered physical and emotional abuse.  The parties have proposed a settlement, under which they have agreed to compromise all claims by the plaintiff against all defendants for $150,000.  Under the proposed settlement, plaintiff, who is now 15, will receive $98,482.53 on his 18th birthday, the funds to be held in an interest bearing account until that time.  The balance of the $150,000 is to be paid to plaintiff's counsel, Lansner Kubitschek Schaffer & Zuccardy, as reimbursement for costs in the amount of $2,276.20 and as a contingent fee in the amount of $49,241.27.  Judicial approval of the settlement is necessary because plaintiff is an infant.  For the reasons set forth below, I respectfully recommend that the court approve the proposed settlement as fair, reasonable and in the best interests of the infant plaintiff.

II.  <u>Facts</u>

        This action arises out of plaintiff's placement into the custody of the New York City Administration for Children's Services ("ACS") from approximately June 20, 2003, through August

11, 2003.  Defendant Catholic Home Bureau, pursuant to a contract
with ACS, supervised plaintiff's placement (see Amended Declara-
tion of Jill M. Zuccardy, dated May 6, 2010 ("Zuccardy Decl."),
(Docket Item 45) at ¶ 4).  On June 24, 2003, approximately four
days after plaintiff and his two sisters were removed from the
custody of their mother, the children were placed in a foster
home in the Bronx; the foster home consisted of a two-bedroom
basement apartment in which the foster parents and their three
biological children resided.  The apartment is alleged to have
been overcrowded, padlocked, without natural light or ventilation
and constantly dark and squalid, in violation of various state
and local statutes.

        Plaintiff was allegedly forced to sleep outside the
apartment in a separate room that lacked windows and proper
ventilation and that was separated from the apartment by a public
hallway.  The family allegedly locked the door to their apartment
at all times, and plaintiff was allegedly allowed into the main
apartment only at mealtimes during the day and only to use the
bathroom at night.  Plaintiff alleges that the couple's son
shared the bedroom with plaintiff, that the son had numerous
psychological and behavioral problems that defendants knew or
should have known about, and that the son physically and sexually
abused and psychologically tormented plaintiff.

The parties attended a settlement conference on October 2, 2009, with representatives for the defendants' insurance companies.  All parties agreed to the proposed settlement described above (Zuccardy Decl. at ¶ 6).  The plaintiff agreed to settle all claims against all defendants for $150,000.  As noted above, after costs of $2,276.20 are deducted from that amount, one-third of the remainder, or $49,241.27, is to be paid to plaintiff's counsel as a fee (Declaration of Jeaneth S., dated May 6, 2010 ("S. Decl."), (Docket Item 46) at ¶ 6).  The plaintiff will receive the balance of $98,482.53 on his 18th birthday; the funds will be held in an interest bearing account at Emigrant Savings Bank until that time.

On November 23, 2009, the Honorable Deborah A. Batts, United States District Judge, referred the matter to me for the purposes of conducting an infant settlement/compromise hearing (Order of Reference, dated Nov. 23, 2009 (Docket Item 41)).  On April 19, 2010, I issued an Order directing the parties to file an amended application for approval of the settlement and to correct certain deficiencies in the original application.  Specifically, I noted that

> The materials currently before me do not provide adequate information concerning the settlement and the attorney's fees sought to permit me to assess the settlement intelligently.  The papers currently before me do not explain why the amount of the settlement is

>fair and reasonable, they do not set forth where or how
>the funds will be invested until the plaintiff reaches
>his majority, they do not explain how the funds will be
>distributed to plaintiff at his majority, they provide
>no detail concerning the nature of the legal services
>provided, no contemporaneous time records, no explana-
>tion of the costs incurred by counsel and they provide
>no information concerning the identity experience of
>the attorneys who worked on the matter and the reason-
>able rates of compensation in the Southern District of
>New York for attorneys with similar experience.

(Order, dated April 19, 2010 (Docket Item 42) ("April 19 Or-
der")).

Subsequently, the plaintiff's counsel filed an amended declaration in support of the proposed settlement, attaching the retainer agreement with the plaintiff's mother, contemporaneous time sheets recording the work performed by the firm, and resumes of the members of the firm who worked on this action.  (Zuccardy Decl., and Exs. 1, 2, 3 and 4).  Additionally, the plaintiff's mother also filed a declaration on May 6, 2010 (S. Decl.).  Based on these submissions -- as well as a telephone conference with the parties on December 9, 2009, in which they suggested a hearing would not be needed -- I conclude that the court may approve the proposed settlement without a _viva voce_ hearing.

III.  <u>Analysis</u>

    A.  Standards Applicable to
       <u>an Infant Compromise</u>

In determining whether an infant compromise should be approved, "the Court's role is to 'exercise the most jealous care that no injustice be done' to the infant." <u>Southerland v. City of New York</u>, CV-99-3329 (CPS), 2006 WL 2224432 at *2 (E.D.N.Y. Aug. 2, 2006), <u>quoting</u> <u>Anderson v. Sam Airlines</u>, 94 Civ. 1935, 1997 WL 1179955 (E.D.N.Y. Apr. 25, 1997) (citation omitted).  In this district, Local Rule 83.2(a)(1) requires that

> [a]n action by or on behalf of an infant or incompetent shall not be settled or compromised . . . without leave of the court embodied in an order, judgment or decree. The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the court, for cause shown, may dispense with any New York State requirement.

Consistent with the applicable New York State statutes and rules, the analysis in this jurisdiction centers on "whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." <u>Martegani v. Cirrus Design Corp.</u>, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (Fox, M.J.), <u>citing</u> Local Civ. R. 83.2(a); N.Y. Jud. L. § 474;

N.Y. C.P.L.R. §§ 1205-08; see also Edionwe v. Hussain, 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (required analysis is whether settlement is "fair and reasonable and in the infant plaintiff's best interests").  "There is no bright-line test for concluding that a particular settlement is fair." School for Language & Commc'n Dev. v. New York State Dep't of Educ., 02-CV-0269 (JS)(JO), 2010 WL 1740416 at *2 (E.D.N.Y. Apr. 7, 2010) (Report & Recommendation), adopted by 2010 WL 1752183 (E.D.N.Y. Apr. 28, 2010), citing Newman v. Stein, 464 F.2d 689, 692-93 (2d Cir. 1972).  Moreover, the Second Circuit has noted that "Rule 83.2 is hardly a rigid obligation imposed on district courts." Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 655 (2d Cir. 1999).  Stated another way, "[d]istrict courts have broad discretion when conducting an infant compromise hearing." Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, 596 F.3d 84, 89 (2d Cir. 2010).

Despite this broad discretion, a court cannot approve a proposed infant compromise unless it is "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." Neilson v. Colgate-Palmolive Co., supra, 199 F.3d at 654, quoting Maywalt v. Parker & Parsley Petro. Co., 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotation marks omitted).  In making this

determination, the court should "'form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'"  Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 377, quoting Newman v. Stein, supra, 464 F.2d at 692.  These other factors include

> (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Allstate Ins. Co. v. Williams, 04 CV 4575 (CLP), 2006 WL 2711538 at *2 (E.D.N.Y. Sept. 21, 2006), quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).  In evaluating the fairness of a proposed settlement, a court is not required to "decide the merits of the case or resolve unsettled legal questions." Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981); School for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3; In re McDonnell Douglas Equip. Leasing Sec. Litig., 838 F. Supp. 729, 739 (S.D.N.Y. 1993) (Cannella, D.J.).

A settlement is presumptively fair and reasonable if "'(I) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently . . . .'" Baez v. City of New York, 09-CV-2635 (RRM)(JO), 2010 WL 1992537 at *2 (E.D.N.Y. Apr. 21, 2010) (Report & Recommendation), adopted by 2010 WL 1991521 (E.D.N.Y. May 17, 2010), quoting Ross v. A.H. Robins Co., 700 F. Supp. 682, 683 (S.D.N.Y. 1988) (Motley, D.J.). Additionally, a settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child. School for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3, citing Sabater v. Lead Indus. Ass'n, 00-CV-8026 (LMM), 2001 WL 1111505 at *3-4 (S.D.N.Y. Sept. 21, 2001) (McKenna, D.J.) and Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996).

Taking these standards and presumptions into consideration, I conclude that the infant compromise is fair, reasonable and in the best interests of the plaintiff.

First, there is no evidence of collusion in this case. Rather, having presided over a settlement conference with the parties and having reviewed the plaintiff's submissions, I am confident that the parties agreed to this compromise only after

dealing extensively and exclusively at arm's length with each other.  Furthermore, pursuant to N.Y. C.P.L.R. § 1208(b)(2), plaintiff's counsel asserts in her amended declaration that neither she nor her firm has represented anyone besides the plaintiff in any claims arising from the same occurrences (Zuccardy Decl. at ¶ 37).  Additionally, plaintiff's counsel represents that neither she nor her firm received or will receive any compensation from any party adverse to the interests of the infant plaintiff, nor have they become involved in the settlement at the behest of any opposing or adverse party (Zuccardy Decl. at ¶¶ 35-36).

Second, plaintiff's counsel is experienced in cases such as this.  See, e.g., Denes Q. v. Caesar, 07-CV-1281 (CBA)(JO), 2009 WL 2877155 (E.D.N.Y. Sept. 8, 2009)(adopting Report & Recommendation).  Plaintiff's counsel's amended declaration states that her firm "has demonstrated experience in child welfare law and federal civil rights practice" and "has successfully litigated numerous cases involving the constitutional rights for parents and children" (Zuccardy Decl. at ¶ 18).  Significantly, plaintiff's counsel represented the plaintiff in Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134 (2d Cir. 1981), which established "the right of children in foster care to be protected from physical violence while in

government custody" (Zuccardy Decl. at ¶ 18).  A review of the cases cited in support of this assertion demonstrates that Doe was in fact a key case on the issue of whether an infant in the custody of the state can proceed on a claim for physical injuries under 42 U.S.C. § 1983 based on a 14th Amendment violation.  See Yvonne L., by & through Lewis v. New Mexico Dep't of Human Servs., 959 F.2d 883, 892 (10th Cir. 1992) (calling Doe "[t]he leading and earliest circuit-level case"); Taylor by & through Walker v. Ledbetter, 818 F.2d 791, 795 (11th Cir. 1987).  In sum, it appears that plaintiff did choose a firm that has specialized in similar cases.

Third, I am satisfied that sufficient discovery has occurred to warrant an educated analysis of the proposed compromise and the issues involved.  On May 1, 2009, Judge Batts issued a scheduling order requiring the parties to complete discovery by October 30, 2009 (Order, dated May 1, 2009 (Docket Item 34) ("May 1 Order")).  As noted above, on October 2, 2009, I presided over a settlement conference in which the parties reached a settlement, and I am satisfied on the basis of that conference that the parties had a sufficient understanding of the facts to enable an intelligent evaluation of the risks and benefits of further litigation.

Furthermore, I have found no evidence to rebut the presumption that the settlement that plaintiff's mother agreed to was fair and in the best interests of the plaintiff.[1] Plaintiff's attorney and plaintiff's mother discussed the option of an annuity available after plaintiff's 18th birthday, rather than a lump sum payment, but plaintiff's mother chose not to structure the settlement in such a manner (Zuccardy Decl. at ¶ 34; S. Decl. at ¶ 7).  Because there is no evidence that the annuity has a higher present value than the lump sum payment, this decision was not unreasonable.

Under the proposed infant settlement, the plaintiff would receive $98,482.53 on his 18th birthday on July 6, 2013. In the meantime, the funds would be held in an interest bearing account at Emigrant Savings Bank.  Plaintiff's counsel asserts that the bank selected has held settlement amounts "for many other infant clients over the past two decades and [the firm] has found the bank to be responsive and reliable, and to offer a good

---

[1] While the removal of the plaintiff from the custody of his mother and into the custody of ACS in June 2003 was the event that set into motion the underlying claims, plaintiff's mother had regained custody by the time of this lawsuit, and as such, she is entitled to the presumption.  See School for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3, citing Sabater v. Lead Indus. Ass'n, supra, 2001 WL 1111505 at *3-4 and Stahl v. Rhee, supra, 220 A.D.2d at 46, 643 N.Y.S.2d at 153.

rate of return" (Zuccardy Decl. at ¶ 33).  I have no reason to doubt this assertion, and, thus, the selection of the bank and the manner in which the settlement amount will be held and distributed is therefore acceptable.

Finally, plaintiff's counsel has adequately explained why the settlement amount is fair and reasonable.  Although I need not "decide the merits of the case or resolve unsettled legal questions," Carson v. American Brands, Inc., supra, 450 U.S. at 88 n.14, I must still analyze the settlement figure under the appropriate standards and factors.

I have evaluated the original claim, the record and the proposed agreement and have concluded that a settlement amount of $150,000 is wholly reasonable under the circumstances.  First, the terms of the compromise compare favorably to the likely rewards of litigation.  Plaintiff's counsel notes for the record that I had previously pointed out the "difficulties of both law and proof" that plaintiff would have in going forward (Zuccardy Decl. at ¶ 7).  In Section 1983 cases, a plaintiff must establish "deliberate indifference," which is essentially equivalent to the reckless disregard of a risk.  Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Thus, it is not enough under this type of claim to prove that a party is merely negligent in placing a given foster child in a given home.

13

Furthermore, there does not appear to be any medical evidence of the physical assault of plaintiff, and, thus, no long-term physical damage.  Moreover, substantiating the claim would be difficult in the absence of eyewitnesses or an admission.  It would have likely involved placing plaintiff on the stand, and plaintiff's counsel has expressed a desire to spare their client "the embarrassment and anxiety of testifying at deposition and, subsequently, in open court" (Zuccardy Decl. at ¶ 7).  Therefore, plaintiff's decision to settle at this juncture seems particularly prudent.

The proposed settlement was reached after nearly three years of litigation and attorney's fees, if calculated at an hourly rate, already well into six figures.  As there was substantial doubt as to whether plaintiff could recover a six- or seven-figure damages award at trial, I concur with the decision to settle for the amount agreed upon.

Based on this evaluation of the circumstances of the case, I am satisfied that the infant compromise is fair, reasonable, and in the best interests of the plaintiff.

B.  Early Release of Funds

Plaintiff's mother has requested that funds be released to the plaintiff before his 18th birthday (S. Decl. at ¶¶ 2, 8).

14

She had previously made such a request to the court (11/13/09 Letter from Jill M. Zuccardy to Judge Batts (Docket Item 40)).[2] Plaintiff's mother understood that she "would need to make an application to the Court" for an early release of these funds and wanted to "speak to the Court about this at the Infant's Compromise hearing" (S. Decl. at ¶ 8).  Plaintiff's mother has not established why an early release of funds is appropriate.  In fact, evidence in the record suggests that any early release would be inappropriate and not in the best interests of the plaintiff.

Plaintiff's counsel's affidavit states that "[i]t is anticipated that Kendrick will need the funds for college" (Zuccardy Decl. at ¶ 34).  The plaintiff is currently 15 years old, and he was in ninth grade as of the settlement conference in October 2009.  Presuming he is in 10th grade as of the date of this Report and Recommendation and he does not graduate high school early, he will not be attending college until the fall of 2013 at the earliest.  Thus, plaintiff will not need the funds for college until summer 2013.

---

[2]The letter from Ms. Zuccardy to Judge Batts was mistakenly docketed on ECF and characterized as a motion for disbursement of funds.  It was in fact a letter submitted in response to Judge Batts' request which explained the legal standard for early disbursement of an infant's settlement funds to a guardian.

Additionally, plaintiff's counsel's letter to Judge Batts on November 13, 2009, states that Kendrick's mother wished to use the settlement money "to purchase various items" (11/13/09 Letter from Jill M. Zuccardy to Judge Batts).  Pursuant to N.Y. C.P.L.R. § 1211, a person may petition the court "for the application of an infant's property or a portion thereof to the infant's support, maintenance or education . . . ."  Case law suggests that "[t]he purpose of these funds is not to supplement or substitute for the financial obligations of the parent to her child.  Rather, the funds are to provide for the child's future, and the Court will only permit expenditure of the funds for an extraordinary purpose."  Star S. v. Clark, 01-CV-6871 (DLI)(CLP), 2009 WL 81340 at *1 (E.D.N.Y. Jan. 9, 2009), citing In re Marmol, 168 Misc. 2d 845, 849, 640 N.Y.S.2d 969, 972 (Sup. Ct. N.Y. Co. 1996).  Where a trustee requested withdrawal for expenditures for clothes and furniture, for example, that application was denied, as there was "no justification given." Star S. v. Clark, supra, 2009 WL 81340 at *2.

Similarly, there has been no justification given by the plaintiff's mother here, and her request has not even risen to the specificity seen in the above case.  Since plaintiff's counsel states that the funds are anticipated for college, and since plaintiff's mother cannot cite extraordinary circumstances

that would give rise to an early release of funds, I recommend the denial of her request for an early release of the funds without prejudice to any additional application plaintiff's mother may make.

    C.  Standards for Assessing
        the Reasonableness of
        Attorney's Fees and Costs

     "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[3]

     The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184. This rate should be "in line

---

   [3]This figure was previously referred to as the "lodestar," but in Arbor Hill the Second Circuit abandoned the use of this metaphor as unhelpful. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 190; see also Green v. Torres, 361 U.S. 96, 98 (2d Cir. 2004) (per curiam) ("'[T]he starting point for the determination of a reasonable fee is the calculation of the lodestar amount.'"), quoting Hensley v. Eckerhart, supra, 461 U.S. at 433; Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008) (Lynch, D.J.).

with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); accord Reiter v. MTA N.Y. City Tran. Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Co., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y. City Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Finally, the Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration),

and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.

In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates." Farbotko v. Clinton Co., supra, 433 F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

With specific regard to an infant compromise proceeding, the examination should center on whether there was "'suitable compensation for the attorney for his service . . . [on] behalf of the . . . infant.'" Baez v. City of New York, supra, 2010 WL 1992537 at *3, quoting Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4. An infant plaintiff's guardian's agreement to a proposed attorney fee is not determinative, because "in the last analysis the amount of the fee must be fixed by the court and any agreement of the guardian is advisory only." Werner v. Levine, 52 Misc. 2d 653, 654-55, 276 N.Y.S.2d 269, 271 (Sup. Ct. Nassau Co. 1967); see also Baez v. City of New York, supra, 2010 WL 1992537 at *3 (agreements on fees "serve only to guide the court in making a determination

19

committed to its sound discretion", citing Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4).

An attorney seeking fees must maintain and submit time records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested." Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 378, quoting Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (Sweet, D.J.) (internal quotation marks omitted). Similarly, "[w]here an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs." Mateo v. United States, 06 Civ. 2647 (KNF), 2008 WL 3166974 at *5 (S.D.N.Y. Aug. 6, 2008) (Fox, M.J.), citing Lide v. Abbott House, 05 Civ. 3790 (SAS), 2008 WL 495304, at *2 (S.D.N.Y. Feb. 25, 2008) (Scheindlin, D.J.).

In my April 19 Order, I noted the lack of contemporaneous time records, details concerning the nature of legal work done, explanations of the costs incurred, information concerning the experience of the firm's attorneys, and the reasonably comparable rates charged in the Southern District of New York for attorneys with similar experience.  The supplemental submissions satisfy these concerns.

First, "litigation costs and expenses must be deducted from the gross settlement amount before determining attorney's fees in infant compromises not relating to medical malpractice." Allen v. Robert's American Gourmet Food, Inc., supra, 2009 WL 2951980 at *12 (collecting cases).  Accordingly, in the declaration that plaintiff's counsel submitted, the firm has first subtracted actual costs of $2,276.20 from the proposed settlement of $150,000.00 (Zuccardy Decl. at ¶ 9).  The majority of the costs relate to postage, photocopying and faxing and are properly reimbursable.

After subtracting these fees, the proposed settlement allocates two-thirds of the remainder, or $98,482.53, to plaintiff and one-third, or $49,241.27, to counsel.  Plaintiff's counsel has submitted contemporaneous time records totaling $199,905.95 in attorney's fees for 1238.20 hours (Zuccardy Decl. Ex. 3).  While the court may quibble with a lack of specificity on a few of the line items, the vast majority of the records provides sufficient detail to understand "the nature of the work done, the need for it, and the amount of time reasonably required . . . ." Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 378 (citation omitted) (internal quotation marks omitted). Moreover, under the proposed agreement, plaintiff's counsel is

only collecting 24.6 percent of the fees earned, and, thus, the overall fee agreement would survive any minor line-item scrutiny.

The attorneys who worked on the case, their backgrounds, and the hourly rates sought for each are set forth below:

| Name | Experience | Fee Sought |
|------|-----------|-----------|
| Carolyn Kubitschek | Partner, graduated law school in 1973 | $325-400/hr |
| David Lansner | Partner, graduated law school in 1971 | $325-400/hr |
| Jill M. Zuccardy | Partner, graduated law school in 1990 | $300/hr |
| Darius Charney | Associate, graduated law school in 2001 | $250/hr |
| Christopher S. Weddle | Of Counsel, graduated law school in 1996 | $250-300/hr |
| Charlyne B. Peay | Associate, graduated law school in 2002 | $200/hr |

Additionally, the firm lists 10 other attorneys who worked sporadically on the case over the years, charging different rates, but no information has been provided regarding their respective backgrounds (Zuccardy Decl. at ¶ 29). Given that the average hourly rate actually recovered by plaintiff's attorneys under the proposed settlement will be less than $40/hr ($49,241 ÷ 1238 hrs = $39.77/hr), the rate at which plaintiff's

22

counsel will be paid is actually far below the rates approved for attorneys with comparable experience. See, e.g., LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 518-19 (S.D.N.Y. 2010) (Holwell, D.J.) (finding $600/hour rate reasonable in class action IDEA suit for each of two senior partners with a combined 49 years of experience); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (Francis, M.J.) (rates of $600/hour for counsel, $350/hour for senior associates, $250/hour for junior associates, $175/hour for law clerks, and $125/hour for paralegals found reasonable in employment discrimination suit); Wise v. Kelly, 620 F. Supp. 2d 435, 443-47 (S.D.N.Y. 2008) (Scheindlin, D.J.) (adopting Report & Recommendation of Katz, M.J.) (rates of $425/hour for founding partner with nearly 20 years of experience and $300/hour for co-counsel associate with six years of experience found reasonable in civil rights case); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118 at *3-4 (S.D.N.Y. 2007) (Lynch, D.J.) ($450/hour requested rate for partner found reasonable, as was $400/hour rate for co-counsel with 15 years' experience and $300/hour for sixth-year associate in civil rights case); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 211-12 (S.D.N.Y. 2001) (Marrero, D.J.) (in civil rights case, rates ranging from $180/hour to $390/hour found reasonable); Marisol A. ex rel. Forbes v. Giuliani, 111 F.

Supp. 2d 381, 386 (S.D.N.Y. Aug. 30, 2000) (Ward, D.J.)
($350/hour for attorneys with more than 15 years of experience,
$300/hour for attorneys with 10-15 years, $230-250/hour for
attorneys with seven-nine years, $180-200 for attorneys with
four-six years, and $130-150/hour for attorneys with one-three
years were reasonable rates in civil rights case); Skold v.
American Int'l Group, Inc., 96 Civ. 7137 (HB), 1999 WL 405539 at
*6-7 (S.D.N.Y. June 18, 1999) (Baer, D.J.) ($400/hour for
attorney providing overall strategy and direction, $275/hour for
lead counsel and $225/hour for co-counsel found reasonable in
Title VII case); Rodriquez ex rel. Kelly v. McLoughlin, 84 F.
Supp. 2d 417, 423 (S.D.N.Y. 1999) (Wood, D.J.) ($425/hour
determined to be reasonable rate for partner overseeing civil
rights case although "not a seasoned civil rights practitioner."
(internal quotation marks omitted)).

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I
respectfully recommend that the court approve the parties'
proposed infant compromise, which allocates $98,482.53 to
plaintiff, $49,241.27 to plaintiff's counsel in attorney's fees,
and $2,276.20 to plaintiff's counsel in costs.  I further

recommend that the court retain jurisdiction of this action for the purposes of enforcing the terms of the underlying settlement.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         October 14, 2010

                                    Respectfully submitted,

                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

Carolyn A. Kubitschek, Esq.
Lansner Kubitschek Schaffer & Zuccardy
Suite 201
325 Broadway
New York, New York  10007

Vincent A. Nagler, Esq.
Callan, Koster, Brady & Brennan LLP
One Whitehall Street
New York, New York  10004

Carl J. Schaerf, Esq.
Schnader, Harrison, Segal & Lewis
Suite 3100
140 Broadway
New York, New York  10005

26